Gerald E. WALLER; Robert C. Bryson; Harold Kurofsky; James E. Fenningham; Elizabeth Montgomery; Walter Boge, on Behalf of Themselves and All Others Similarly Situated and Derivatively on Behalf of the Former Non–Contributory Retirement Program for Certain Employees of Blue Cross of California, Plaintiffs–Appellants,

v.

BLUE CROSS OF CALIFORNIA, Blue Cross and Blue Shield Association and Leonard D. Schaeffer, Defendants–Appellees.

No. 92–55487.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 5, 1993.

Decided July 5, 1994.

Rankin; and James R. Grimes, Chicago, IL, for defendants-appellees.

Philip R. Hertz, Washington, DC, for amicus Pension Benefit Guar. Corp.

Susan M. Green, Washington, DC, for amicus Secretary of Labor.

Before NORRIS, WIGGINS, and O'SCANNLAIN, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

Plaintiffs-appellants brought this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et. seq.* ("ERISA"), alleging that defendants-appellees breached their fiduciary duty to the plan by imprudently choosing annuity providers to cover plan liabilities as part of terminating plaintiffs' plan. Without opinion, the district court granted defendants' motion to dismiss the Second Amended Complaint for failure to state a claim. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part and reverse in part.

## I

### FACTS AND PROCEDURAL HISTORY

In 1986 Blue Cross of California ("Blue Cross") terminated its retirement plan (the "Retirement Plan" or "Plan") by using approximately $62 million of the Plan's assets to purchase annuities for Plan participants and beneficiaries from Executive Life Insurance Company ("Executive Life") and Provident National Assurance Company ("Provident").[1] After purchasing the annuities, Blue Cross obtained a reversion of the residual assets, totalling approximately $32 million.

Plaintiffs represent participants and beneficiaries who are eligible (or will become eligible) to receive retirement benefits from the Retirement Plan in the form of annuities

Michael A. Sherman, Barrack, Rodos & Bacine, San Diego, CA, and Leonard Barrack, Barrack, Rodos & Bacine, Philadelphia, PA, and William S. Lerach, Milberg, Weiss, Bershad, Spechrie & Lerach, San Diego, CA, for plaintiffs-appellants.

James C. Martin and Kurt C. Peterson, Crosby, Heafey, Roach & May; Jeffrey S. Davidson, Alexander F. MacKinnon, Kirkland & Ellis, Los Angeles, CA; James W.

---

1. We review de novo a dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Kruso v. International Tel. & Tel. Corp.,* 872 F.2d 1416, 1421 (9th Cir.1989). Because this case was dismissed for failure to state a claim, all allegations of material fact in plaintiffs' complaint are taken as true and construed in the light most favorable to the plaintiffs. *Love v. United States,* 915 F.2d 1242, 1245 (9th Cir.1989).

issued by Executive Life or Provident. Defendants are Blue Cross, its president, Leonard D. Schaeffer, and the named administrator, Blue Cross and Blue Shield Association (the "Association"). Plaintiffs allege that defendants were fiduciaries of the Retirement Plan and are liable under ERISA for the breach of fiduciary duty.[2]

Plaintiffs do not contend that defendants breached their fiduciary duties in deciding to terminate the Retirement Plan. They acknowledge that ERISA gives employers the right to make a business decision to terminate a plan and transfer to themselves any residual assets remaining after the plan's liabilities are fully satisfied. Rather, the gravamen of plaintiffs' action is that defendants breached their fiduciary duties by unlawfully employing an infirm bidding process geared solely toward selecting those annuity providers who would enable defendants to obtain the maximum reversion possible. Plaintiffs claim that defendants' breach violated three sections of ERISA: (1) ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B), which imposes duties of loyalty and care on plan fiduciaries (Claims Two and Five); (2) ERISA § 4044(d), 29 U.S.C. § 1344(d), which requires that all liabilities of the plan be satisfied before an employer may take a reversion of residual assets (Claims Three and Six); and (3) ERISA § 406(a) and (b), 29 U.S.C. § 1106(a) and (b), which provides a list of prohibited transactions between a party in interest and a plan and between a plan fiduciary and the plan (Claims One and Four).

Plaintiffs seek to recover monetary damages and obtain equitable relief, including a constructive trust on all funds improperly or illegally obtained by Blue Cross as a result of defendants' conduct. They appeal the district court's dismissal of the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. We affirm in part and reverse in part.

## II

## STANDING

■ We first address defendants' threshold argument that plaintiffs lack standing to bring this action. We agree with defendants that participants and beneficiaries of a terminated plan have no standing to seek legal damages for breach of fiduciary duty once the Plan was terminated and Plan liabilities were satisfied. *Kuntz v. Reese*, 785 F.2d 1410, 1411 (9th Cir.1986) (per curiam).

■ We agree with plaintiffs, however, that they have standing to pursue the equitable remedy of a constructive trust to distribute defendants' allegedly ill-gotten profits to the former participants and beneficiaries of the Plan. In *Amalgamated Clothing & Textile Workers v. Murdock*, 861 F.2d 1406 (9th Cir.1988), we held that participants and beneficiaries of a terminated plan had standing to sue on behalf of all participants and beneficiaries of the plan for a constructive trust remedy to strip a fiduciary of ill-gotten profits earned from breach of his fiduciary duties. *Id.* at 1416–17. We explained that "ill-gotten profits [are] held in a constructive trust for plan participants and beneficiaries [and] may be construed as equitably vested benefits under an ERISA plan." *Id.* at 1419. Thus, "[e]ven after plan participants and beneficiaries have received their actuarially vested benefits from the plan, the plan should be viewed as continuing to exist for the purpose of distributing the equitably vested benefits." *Id.*

Defendants' reliance on *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), for its argument that participants and beneficiaries must in all circumstances bring suit on behalf of the plan rather than on their own behalf is misplaced.[3] As we explained in *Murdock*, "every one of the elements of ERISA ana-

---

**2.** Plaintiffs sue defendants as fiduciaries and co-fiduciaries. ERISA makes a fiduciary personally liable for a breach of fiduciary duty to the plan. *See* 29 U.S.C. § 1109(a). ERISA also imposes liability on a fiduciary, in certain circumstances, for a co-fiduciary's breach of fiduciary duty. *See* 29 U.S.C. § 1105(a).

**3.** The Supreme Court in *Russell* held that ERISA § 409 did not provide for suits by an individual participant or beneficiary for extracontractual damages. *Russell*, 473 U.S. at 144, 105 S.Ct. at 3091.

lyzed in *Russell*—the legislative history, the text of § 409(a), the statutory duties of fiduciaries, and the statutory rights of beneficiaries—supports the imposition of a constructive trust on the alleged ill-gotten profits in favor of plan participants and beneficiaries ... where that is the only available means of removing the ill-gotten profits from a culpable fiduciary's hands." *Murdock*, 861 F.2d at 1416.[4]

· Defendants' reliance on *Sokol v. Bernstein*, 803 F.2d 532 (9th Cir.1986), is equally unavailing. In *Sokol*, "we followed the Supreme Court's reasoning in *Russell* and decided that extracontractual damages are also not available to individual plan beneficiaries under the catchall equitable relief provision of ERISA § 502(a)(3)." *Murdock*, 861 F.2d at 1417. Defendants argue that *Sokol* bars suits, such as this one, brought on behalf of all participants and beneficiaries rather than on behalf of the plan. We rejected this argument in *Murdock* and will not revisit it here. *See id.*

Following *Kuntz* and *Murdock*, we hold that plaintiffs do not have standing to seek legal damages, but do have standing to pursue the constructive trust they seek to impose on any ill-gotten profits that reverted to Blue Cross as a result of the alleged breach of fiduciary duty.[5] Because we hold that plaintiffs only have standing to bring a suit for constructive trust, we affirm the district court's dismissal of all claims against Leonard Schaeffer and the Association because nothing in the complaint indicates that anyone other than Blue Cross received any of the $32 million. *See id.* at 1419 (explaining that a constructive trust remedy is not available against a party that never had possession or title to the money).

## III

### STATUTE OF LIMITATIONS

■ Next, we address Blue Cross' contention that plaintiffs' claims are time-barred.[6] The complaint was filed more than four years after Blue Cross purchased the annuities

---

**4.** ERISA § 409(a) states that:
(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.
29 U.S.C. § 1109(a).
Defendants argue that this case is distinguishable from *Murdock* because plaintiffs here do not allege that a constructive trust in favor of all participants and beneficiaries is "the only available means of removing the ill-gotten profits." *See Murdock*, 861 F.2d at 1416. We are unpersuaded. Like the plan in *Murdock*, plaintiffs in this case allege that the Retirement Plan was overfunded at the time of termination and provided for reversion of residual assets. Therefore, a constructive trust in favor of all participants and beneficiaries rather than the Plan provides the only mechanism to assure that any ill-gotten profits, once removed from the breaching fiduciary, "would [not] recycle immediately back to one of the allegedly culpable fiduciaries...." *Murdock*, 861 F.2d at 1415.

**5.** Plaintiffs include Executive Life and Provident annuity holders. Defendants also challenge the

Provident plaintiffs' standing because they have not suffered any losses. As we made clear in *Murdock*, plaintiffs need not establish financial loss to bring an action seeking a constructive trust to remedy a breach of fiduciary duty. 861 F.2d at 1411–12. "The purpose of this rule is to deter the fiduciary from engaging in disloyal conduct by denying him the profits of his breach." *Id.* at 1411. Blue Cross has filed a supplemental brief informing this court that Executive Life's assets have been sold in conservatorship to Mutelle Assurances Artisanale de France, and thus, that Executive Life annuitants will not lose their benefits. For the same reason Provident annuitants have standing to bring this suit even in the absence of any allegation that they have suffered a financial loss, we also hold that this case remains justiciable with respect to Executive Life annuitants. Because we hold that this case remains justiciable regardless of financial loss to plaintiffs, we do not address plaintiffs' response that they will still suffer financial loss even with the sale of Executive Life's assets to Mutelle Assurances Artisanale de France.

**6.** Defendants filed two briefs, one by the Association and the other by Blue Cross and Schaeffer. We read each brief to incorporate the other by reference. So although we affirm the dismissal with respect to the Association and it is therefore no longer now part of the suit, we will treat arguments raised in the Association's brief as if raised by Blue Cross.

from Executive Life and Provident. Under ERISA § 413, 29 U.S.C. § 1113, no action for fiduciary breach may be brought after the earlier of (1) six years from the date of the last action constituting part of the breach (or on which the fiduciary could have cured the breach or violation), or (2) three years from the earliest date on which plaintiff had actual knowledge of the breach or violation. 29 U.S.C. § 1113.[7] Situations involving "fraud or concealment" are exempt from these provisions, and in such cases, an action may be filed up to six years after the date the breach or violation was discovered. 29 U.S.C. § 1113.

If we accept the facts as alleged in the complaint as true, as we must for Rule 12(b)(6) purposes, plaintiffs' action is timely. We reject Blue Cross' argument that the statute of limitations necessarily began to run at the point plaintiffs learned that Blue Cross purchased annuities from Executive Life and Provident. We decline to equate knowledge of the purchase of annuities in this case with actual knowledge of the alleged breach of fiduciary duty. *Cf. Fink v. National Sav. and Trust Co.*, 772 F.2d 951, 957 (D.C.Cir.1985) ("The disclosure of a transaction that is not inherently a statutory breach of fiduciary duty ... cannot communicate the existence of an underlying breach.").

Instead, we focus on the language of the statute, which tolls the statute of limitations until the time of a plaintiff's "actual knowl-edge of the breach or violation." 29 U.S.C. § 1113. Although plaintiffs fail to allege the exact date they gained actual knowledge of the alleged breach of fiduciary duty, they do allege that the action was filed within three years of such actual knowledge. Specifically, plaintiffs allege that they "did not have actual knowledge ... until the publicized account of ELIC's financial difficulties and its ultimate insolvency and the subsequent investigation by counsel for plaintiffs and the Class." CR 51 ¶ 47. Blue Cross does not dispute that if the statute of limitations is tolled until the date plaintiffs allege they gained actual knowledge, this action is timely. Accordingly, we hold that for the purposes of Blue Cross' Rule 12(b)(6) motion to dismiss, the action is not time-barred.[8]

## IV

## MERITS

We now turn to the merits. Plaintiffs allege that Blue Cross breached its fiduciary duty by choosing annuity providers using an infirm bidding process that sacrificed participants' and beneficiaries' best interests to maximize the reversion of residual plan assets.[9] Based on these alleged facts, plaintiffs contend that Blue Cross violated ERISA §§ 404, 406, and 4044, 29 U.S.C. §§ 1104, 1106, and 1344. Blue Cross maintains that it did not breach its fiduciary duty to the Plan because purchasing annuities as part of a

---

**7.** ERISA § 413 provides:

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.

**8.** The only statute of limitations issue we need to decide in this appeal is that the complaint sur-vives the Rule 12(b)(6) motion to dismiss under § 413's three-year statute of limitations. We need not consider, at this stage of the litigation, whether plaintiffs have pleaded fraud and concealment sufficient to bring into play § 413's six-year statute of limitations.

**9.** For instance, plaintiffs allege that Blue Cross disregarded the possibility of purchasing safer annuities, was in a rush to terminate the Plan by December 31, 1986, and thus did not provide enough time for companies to submit bids. Plaintiffs also allege that Blue Cross ignored Touche Ross' (currently known as Deloitte & Touche) recommendation not to purchase annuities from Executive Life and knew or should have known of certain questionable financial practices that made Executive Life a risky annuity provider.

plan termination is not a fiduciary act.[10] We disagree and hold that plaintiffs have alleged facts sufficient to state a claim for breach of fiduciary duty under ERISA § 404. We affirm, however, the district court's dismissal of plaintiffs' claims based on alleged violations of ERISA §§ 406 and 4044.

### A

### ERISA § 404

Plaintiffs allege that Blue Cross breached its fiduciary duty under § 404(a)(1)(A) and (B), which imposes a fiduciary duty of loyalty and care, in selecting Executive Life and Provident as annuity providers to cover plan liabilities. *See* 29 U.S.C. § 1104(a)(1)(A) & (B).[11] Blue Cross responds that (1) purchasing annuities as part of terminating the Plan was not a fiduciary act, but rather a business decision not subject to fiduciary obligations; (2) so long as it followed the requirements of §§ 4041–4044, which define procedures for terminating ERISA plans, there can be no violation of ERISA; and (3) plaintiffs improperly attempt to base their § 404 claim on Executive Life's later financial difficulties rather than on what Blue Cross knew at the time of the purchase. We address each of these issues in turn.

■■■ Plaintiffs do not dispute that "the decision to terminate a plan is a business decision and does not constitute a breach of fiduciary obligation." *Murdock*, 861 F.2d at 1419 (citations omitted). By alleging that Blue Cross breached its fiduciary duty in the selection of annuity providers, plaintiffs attack not the *decision* to terminate, but rather the *implementation* of the decision. We believe that this distinction is dispositive and hold that Blue Cross acted in a fiduciary capacity when choosing annuity providers to satisfy plan liabilities. *See District 65, United Automobile etc. Workers v. Harper & Row Publishers, Inc.*, 670 F.Supp. 550, 556 (S.D.N.Y.1987) ("Harper & Row is . . . liable as a fiduciary, because its acts with respect to implementing the termination decision required discretionary decisions on its part"); *Cooke v. Lynn Sand & Stone Co.*, 673 F.Supp. 14, 23 (D.Mass.1986) (explaining that the choice of a discount rate to minimize the lump-sum distribution to plan participants as part of the termination in order to maximize the reversion is a breach of fiduciary duty).

ERISA's definition of "fiduciary" supports our holding. Under ERISA, a person is a fiduciary of a plan to the extent that he or she "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets. . . ." 29 U.S.C. § 1002(21)(A). The choice of an annuity provider is the quintessential exercise of "discretionary control." "Congress' primary purpose in enacting this comprehensive legislative scheme was to prevent the great personal tragedy suffered by employees whose vested benefits

---

**10.** Blue Cross also argues that the complaint does not allege facts indicating that it breached its fiduciary duty when purchasing Provident annuities. While we agree that the complaint alleges more evidentiary facts concerning the purchase of annuities from Executive Life, we read the complaint to allege that the entire bidding process for choosing annuity providers was infirm and that Blue Cross disregarded the possibility of purchasing safer annuities in its haste to terminate the Plan and to obtain the largest reversion possible.

Moreover, Provident annuity holders' participation is not essential to the suit so long as the action is brought on behalf of all participants and beneficiaries of the Plan. A fiduciary's duty runs to the plan. *See* 29 U.S.C. § 1109(a). Thus, the district court on remand need not find that the decision to purchase annuities from Provident was imprudent to sustain this action for breach of fiduciary duty. All participants and beneficiaries of the Plan had an equal interest in the proper management of all Plan assets, even if later one group of former participants and beneficiaries ultimately suffers greater losses than the others because of the alleged breach.

**11.** ERISA § 404(a) provides in relevant part:

(1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
(A) for the exclusive purpose of:
(i) providing benefits to participants and their beneficiaries . . .
(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. . . .
29 U.S.C. § 1104(a)(1)(A)(i) & (B).

are not paid when pension plans are terminated." *Cunha v. Ward Foods, Inc.*, 804 F.2d 1418, 1423 (9th Cir.1986) (quoting *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 374, 100 S.Ct. 1723, 1732–33, 64 L.Ed.2d 354 (1980)) (internal quotations omitted). It would be odd indeed if ERISA operated as Blue Cross so strenuously maintains it does—to absolve the employer or administrator of making any meaningful investigation of the annuity provider at such a critical moment in the life of the plan.

Blue Cross asks us to ignore the obvious and instead focus on ERISA's separate treatment of fiduciary duties in separate Titles. Blue Cross argues that because fiduciary duties are in Title I and termination procedures are in Title IV and because the provisions of Title IV do not state that Title I fiduciary duties apply to it, we can infer that Congress did not intend fiduciary duties to govern any termination related actions. We are unpersuaded.

■ Amici, the Department of Labor ("DOL") and the Pension Benefit Guaranty Corporation ("PBGC"), take the position that Title I fiduciary standards in addition to Title IV termination requirements must be observed when a pension plan terminates.[12] We find their position to be manifestly reasonable. *Cf. Federal Election Comm'n v. Ted Haley Cong. Comm.*, 852 F.2d 1111, 1115

(9th Cir.1988) (Federal Election Commissioner's interpretation of the Federal Election Campaign Act "is entitled to due deference and is to be accepted by the court unless demonstrably irrational or clearly contrary to the plain meaning of the statute").

Title I and Title IV of ERISA protect pension benefits in different ways. Title I, which is administered by DOL, mandates reporting and disclosure of plans' financial information, sets minimum standards for participation, vesting, and funding of plans, establishes standards of conduct for plan fiduciaries, and provides for civil and criminal enforcement of these requirements. *Nachman Corp.*, 446 U.S. at 361 n. 1, 100 S.Ct. at 1726 n. 1. Title IV, administered by PBGC, establishes the termination insurance program, which guarantees participants in covered pension plans a minimum level of benefits in the event their plan terminates. *Id.* Blue Cross' reliance on ERISA's silence in Title IV is misplaced in light of Title I's inclusive, functionally-based definition of "fiduciary" and ERISA's failure to explicitly exempt the purchase of annuities from Title I's fiduciary obligations.[13] We find ERISA's failure to exempt purchasing annuities from § 404's fiduciary obligations to be a powerful indicator of Congress' intent *not* to exempt the process for choosing annuity providers—possibly the most important decision in the

12. *See, e.g.,* March 13, 1986 DOL Letter to John N. Erlenborn, 13 Pens.Rep. 472, 473 (BNA) (March 13, 1986) ("Consistent with the functional analysis of fiduciary activity, the choice of an insurer would appear to involve the type of discretionary authority over the disposition of plan assets covered in § 3(21)(A) [29 U.S.C. § 1002(21)(A)]"); PBGC Opinion Letter 91–04 (May 3, 1991) (stating that "the selection of an annuity provider and certain other acts associated with a plan termination are subject to the fiduciary provisions of Title I of ERISA"). *See also* DOL Amicus Brief at 27–31; PBGC Amicus Brief at 5–8. The DOL and PBGC are charged with administering Title I and Title IV, respectively, and their construction is entitled to deference. *See Mead Corp. v. Tilley*, 490 U.S. 714, 726, 109 S.Ct. 2156, 2163–64, 104 L.Ed.2d 796 (1989); *Connolly v. Pension Benefit Guaranty Corp.*, 581 F.2d 729, 730 (9th Cir.1978).

13. We disagree with Blue Cross' contention that ERISA provides specific instructions for choosing annuity providers that reasonably could be interpreted to supersede Title I's obligations. Blue Cross argues that because Executive Life was the lowest bidder, it complied with PBGC regulation, 29 C.F.R. § 2617.14(b) (1992), which provides that plan administrators need obtain only three bids from annuity carriers in order to determine the value of plan benefits when a plan termination is contemplated. As the PBGC explains in its amicus brief, Blue Cross' reliance on this regulation is misplaced because the regulation does not apply to the selection of an annuity provider, but only to the initial determination of plan sufficiency before termination is permitted. PBGC Amicus Brief at 8. The preamble to this regulation specifically states that plan administrators purchasing annuities upon plan termination "have a fiduciary obligation to act in the best interest of participants." 46 Fed.Reg. 9532, 9537 (1981). The PBGC has explained that "this obligation would, in some circumstances, require a plan administrator to 'shop' for favorable bids." *Id.*

life of the plan—from fiduciary scrutiny.[14]

This interpretation of ERISA's fiduciary provisions comports fully with the common law of trusts, a body of law on which court should draw when deciding ERISA cases. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989) ("ERISA's legislative history confirms that the Act's fiduciary responsibility provisions, 29 U.S.C. §§ 1101–1114, 'codif[y] and mak[e] applicable to [ERISA] fiduciaries certain principles developed in the evolution of the law of trusts.' " (quoting H.R.Rep. No. 93–533, p. 11 (1973))); *Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.,* 472 U.S. 559, 570, 105 S.Ct. 2833, 2840, 86 L.Ed.2d 447 (1985) ("[R]ather than explicitly enumerating *all* of the powers and duties of trustees and other fiduciaries, Congress invoked the common law of trusts to define the general scope of their authority and responsibility."). *See also Donovan v. Mazzola,* 716 F.2d 1226, 1231 (9th Cir.1983) (explaining that "in enacting ERISA Congress made more exacting the requirements of the common law of trusts relating to employee benefit trust funds"). The common law bestows upon a trustee of a terminating trust all "such duties and powers as are appropriate for the winding up of the trust." 4 A. Scott & W. Fratcher, *The Law of Trusts* § 344 at 542 (4th ed. 1989). In performing these duties, the trustee remains obligated to act solely in the interest of the beneficiaries. *Restatement (Second) of Trusts,* § 170 (1959). In addition, "[t]he trustee has the duty to carry out this phase of the trust administration with reasonable care and prudence." G.G. Bogert and G.T. Bogert, *The Law of Trusts and Trustees* § 1010 at 450 (rev. 2d ed. 1983).

■ Because nothing in ERISA indicates a congressional intent to change the common law duties in this area, we hold that plaintiffs' allegation that Blue Cross acted imprudently and without due regard for the interests of plan participants and beneficiaries in choosing annuity providers states a claim for breach of fiduciary duty in violation of ERISA § 404. We reject Blue Cross' argument that plaintiffs' allegations attempt to hold Blue Cross responsible for subsequent events—Executive Life's conservatorship, for example—that it could not have anticipated at the time it purchased the annuities. Whether Blue Cross could or should have anticipated Executive Life's later financial collapse is a question of fact that we will not address at the Rule 12(b)(6) stage of the litigation. Accordingly, we reverse the district court's dismissal of plaintiffs' § 404 claims.

### B

### ERISA § 4044

Plaintiffs' third and sixth claims for relief seek recovery for Blue Cross' alleged violation of the allocation of assets provision of ERISA § 4044(d) in breach of their fiduciary duty. Because we find these claims without merit, we hold that they were properly dismissed by the district court for failure to state a claim.

■ Section 4044 outlines plan termination procedures and provides for the reversion of residual plan assets to the employer if all liabilities to plan participants and beneficiaries are satisfied, if the plan provides for reversion of assets, and if the distribution does not otherwise contravene any provision of law. *See* 29 U.S.C. § 1344(d).[15] Plaintiffs

---

**14.** Blue Cross' position is further undercut by examining what ERISA explicitly exempts from ERISA's fiduciary duties. In completing standard terminations, plan administrators may distribute benefits by purchasing "irrevocable commitments," annuity contracts, from insurance companies. *See* 29 U.S.C. § 1341(b)(3)(A); 29 C.F.R. §§ 2617.2, 2617.4, 2617.21(a) (1992). The purchase of "irrevocable commitments," the pivotal implementation portion of a standard termination, is covered in ERISA § 4041, 29 U.S.C. § 1341(b)(3)(A)(i). ERISA, however, exempts § 4044, which describes the allocation of plan

assets and the distribution of residual assets to the employer, but not § 4041 from fiduciary duties. *See* 29 U.S.C. §§ 1103(c)(1), 1104(a)(1) & 1108(b)(9). With the final allocation of assets, ERISA permits the employer this one digression from the normal rules that govern the administration of a plan. We are unpersuaded by Blue Cross' attempt to expand this limited exception into a general rule that all actions taken in connection with terminating an ERISA plan are exempt from fiduciary obligations.

**15.** ERISA § 4044(d) provides in relevant part:

contend that as a result of Executive Life's insolvency, all Plan liabilities were not satisfied as required by § 4044(d) and that such noncompliance with § 4044(d) constitutes a breach of fiduciary duty. In other words, according to plaintiffs' argument, once an annuity provider is unable to provide full benefits, plan liabilities are no longer covered and the employer's duties to the plan are "revived." We find nothing in ERISA that supports placing such a burden on a plan sponsor to insure plan benefits after a plan has been terminated.[16] If annuity contracts are purchased for participants in the correct amount and proper form at the time of termination, a plan's liabilities have been satisfied for purposes of Title IV of ERISA. *See* PBGC Opinion Letter No. 91–04 (May 3, 1991). To hold otherwise would nullify ERISA's authorization of plan terminations after purchase of annuities designed to pay vested benefits. *See generally* 29 C.F.R. Part 2617, *Determination of Plan Sufficiency and Termination of Sufficient Plans* (1992). We are unmoved by plaintiffs' attempt to characterize the § 4044 claim as one for breach of fiduciary duty. Nothing in ERISA supports turning to fiduciary duty law to determine whether plan liabilities have been satisfied. Accordingly, we affirm the district court's dismissal of plaintiffs' § 4044 claims.

## C

## ERISA § 406

Plaintiffs' first and fourth claims for relief allege that Blue Cross violated ERISA § 406(a)(1)(D) and (b)(1). Section 406 enumerates various transactions between a plan and a party in interest and between a plan and a fiduciary that constitute *per se* violations of ERISA. *See Donovan v. Mazzola*, 716 F.2d at 1238; *M & R Inv. Co., Inc. v. Fitzsimmons*, 685 F.2d 283, 287 (9th Cir. 1982); 29 U.S.C. § 1106(a) & (b). Plaintiffs argue that the allegedly excess reversion Blue Cross received upon terminating the Plan because of its breach of fiduciary duty is a prohibited transfer to a party in interest[17] under § 406(a).[18] Plaintiffs also argue that Blue Cross entered into a prohibited transaction between a fiduciary and the plan under § 406(b) by ignoring the welfare of Plan participants in their effort to maximize its reversion.[19] The DOL takes the position that plaintiffs' § 406(b) claim was wrongly dismissed "to the extent that plaintiffs allege that defendants consciously and deliberately sacrificed the quality of the annuity pur-

---

(1) Subject to paragraph (3), any residual assets of a single-employer plan may be distributed to the employer if—

(A) all liabilities of the plan to participants and their beneficiaries have been satisfied,

(B) the distribution does not contravene any provision of law, and

(C) the plan provides for such a distribution in these circumstances.

29 U.S.C. § 1344(d)(1)(A), (B) & (C).

**16.** The DOL and PBGC agree that we should affirm the district court's dismissal of these claims for relief. *See* DOL Amicus Brief at 11 n. 4; PBGC Amicus Brief at 9 n. 9.

**17.** ERISA § 3(14) provides in relevant part:

(14) The term "party in interest" means, as to an employee benefit plan—

(A) any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan;

(B) a person providing services to such plan;

(C) an employer any of whose employees are covered by such plan....

29 U.S.C. § 1002(14). Blue Cross does not dispute that it is a party in interest under ERISA.

**18.** ERISA § 406(a) provides in relevant part:

(a) Transactions between plan and party in interest

Except as provided in section 1108 of this title:

(1) A fiduciary respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—

\* \* \* \* \* \*

(D) transfer to, or use by or for the benefit of, a party in interest, of any asset of the plan....

29 U.S.C. § 1106(a)(1)(D).

**19.** ERISA § 406(b) provides in relevant part:

(b) Transactions between plan and fiduciary

A fiduciary with respect to a plan shall not—

(1) deal with the assets of the plan in his own interest or for his own account,

(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries....

29 U.S.C. § 1106(b)(1) & (2).

chased in order to maximize the amount of the reversion, or obtain a collateral benefit for themselves or the sponsor." DOL Amicus Brief at 35 n. 12. Although we give deference to the DOL's interpretation, we agree with Blue Cross that such a reading does not comport with the language of the statute and the caselaw.

 Plaintiffs base their § 406 claim on the allegedly infirm *process* and improper *motivations* for choosing Executive Life and Provident. We hold that purchasing replacement annuities as part of a plan termination even with such alleged infirmities is not the kind of transaction § 406 prohibits. As we explained in *M & R Inv. Co.*:

> The party-in-interest prohibitions [under § 406(a) ] act to insure arm's-length transactions by fiduciaries of funds subject to ERISA. A transaction with a party in interest is prohibited under the presumption that it is not arm's-length. The result is a broad per se prohibition of transactions ERISA implicitly defines as not arm's-length.

685 F.2d at 287. In other words, the transaction, itself, should communicate the breach. ERISA, however, permits the transaction that forms the basis for plaintiffs' § 406 claim—the purchase of annuities as part of a plan termination. *See* 29 U.S.C. § 1341(b)(3)(A)(i). Plaintiffs do not allege that either Executive Life or Provident is a party in interest. Absent such an allegation, we fail to see how purchasing annuities to terminate plaintiffs' Plan constitutes a per se violation of ERISA, even if accomplished through an infirm bidding process or for improper purposes. For the same reason, we also reject plaintiffs' § 406(b) claim. *See Lowen v. Tower Asset Management Inc.*, 829 F.2d 1209, 1213 (2d Cir.1987) (explaining that ERISA "gives notice to fiduciaries that they must either avoid the transactions described in Section 406(b) or cease serving in their capacity as fiduciaries, no matter how sincerely they may believe that such transactions will benefit the plan."); *Fink*, 772 F.2d at 955 (explaining that "[a]cquisition of employer securities by an EIAP does not, in and of itself, violate any of the absolute pro-

hibitions of ERISA ..." even though it may violate ERISA's fiduciary duty of care).

Moreover, ERISA § 408(b)(9) exempts from § 406's prohibited transactions "[t]he making by a fiduciary of a distribution of assets of the plan in accordance with the terms of the plan if such assets are distributed in the same manner as provided under [29 U.S.C.] section 1344 of this title (relating to allocation of assets)." 29 U.S.C. § 1108(b)(9). Plaintiffs, nonetheless, argue that Blue Cross violated § 406 because the reversion of Plan assets was not, in fact, in accordance with the terms of ERISA § 4044. We are unpersuaded. Because we affirm the district court's dismissal of plaintiffs' § 4044 claims, we also reject this argument. Accordingly, we affirm the district court's dismissal of plaintiffs' § 406 claims.

## V

## CONCLUSION

The judgment of the district court is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.