Roger Timothy BAST, individually and as Personal Representative for the Estate of Rhonda Rae Fleming Bast; Douglas Glenn Bast, a minor child, Plaintiffs–Appellants,

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA, an insurance corporation, Defendant–Appellee.

No. 97–35429.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 1998.

Decided June 2, 1998.

As Amended Aug. 3, 1998.

Michael Fleming, Seattle, Washington, for plaintiffs-appellants.

Jerry Spoonemore, Montgomery, Purdue, Blankinship and Austin, Seattle, Washington, for defendant-appellee.

Jane Shapira, Northwest Women's Law Center, Seattle, Washington, for the amicus curiae.

Before: THOMPSON and TASHIMA, Circuit Judges and STAGG, District Judge.*

DAVID R. THOMPSON, Circuit Judge:

Roger Timothy Bast, individually and as the personal representative of the estate of his late wife, Rhonda Rae Fleming Bast, and their minor son, Douglas Glenn Bast ("the Basts") appeal the district court's grant of summary judgment in favor of Prudential Insurance Company ("Prudential"). The Basts argue that Prudential acted in bad faith and breached its fiduciary duty to Rhonda Bast by delaying authorization for a potentially life-saving medical procedure. The district court held that all of the Basts' state law claims were preempted by the Employee Retirement Income Security Act ("ERISA") and that ERISA provides no remedy for Prudential's alleged bad faith denial of benefits.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm. Although this case presents a tragic set of facts, the district court properly concluded that under existing law the Basts are left without a remedy.

I

BACKGROUND

Rhonda Bast was an employee of Cole National Corporation ("Cole"). Cole provided major medical benefits for its employees under the "Cole National Corporation Group Benefit Plan" (the "Plan"). Prudential acted as the administrator of this health insurance plan. Additionally, Prudential provided excess insurance coverage to Cole to cover benefits in excess of certain specified limits. During the relevant time period all of Rhonda Bast's benefits were paid for by Cole out of its general assets.

In December 1990, Rhonda Bast was diagnosed with breast cancer and she underwent a left modified radical mastectomy in January 1991. In August 1991, she was diagnosed with a secondary malignancy in her left lung. Her oncologist recommended that she undergo an autologous bone marrow transplant procedure ("ABMT") and high dose chemotherapy at the Fred Hutchinson Cancer Research Center ("the Center").

On September 9, 1991, the Center contacted Prudential to request pre-authorization for the withdrawal, processing and storage of Rhonda Bast's bone marrow. On September 13, Prudential informed the Center that the bone marrow procedure was not covered by the Plan. This was confirmed in a letter dated September 19th. However, on September 12th, Rhonda Bast, at her own expense, had her bone marrow harvested for processing and storage.

On December 31, 1991, Prudential issued a complete denial of coverage for the ABMT procedure. The denial letter stated that the procedure was not covered because it appeared to be "investigational and/or experimental in nature." The Plan excluded coverage for procedures that were educational, experimental, or investigational in nature.

Rhonda Bast contacted an attorney who sent letters to Prudential on February 13 and 14, 1992. The February 13th letter stated that several other insurers had paid for the ABMT procedure and stated that Rhonda Bast "needs her bone marrow transplant in April [1992]. *Without it she will most likely die.*" The February 14th letter provided a list of cases in which insurance companies had been required to pay for the ABMT procedure.

---

* Honorable Tom Stagg, Senior United States District Judge for the Western District of Louisiana, sitting by designation.

Rhonda Bast's claim was further reviewed by Prudential on February 28, 1992. On that date, Prudential's medical director informed Rhonda Bast's claim consultant that "while the protocol is clearly investigational, since it is a NCI [National Cancer Institute] sponsored trial, and according to the rules established in a recent GCLM [Group Claim Division Memorandum], it is eligible for benefits." On that same day, the claim consultant called the Center and advised it that the ABMT procedure and high dose chemotherapy would be covered under the Plan. Prudential also mailed a letter confirming the coverage, and in early March 1992, Prudential reimbursed the Basts for the costs of the harvesting and storage procedure.

Prudential's authorization of the ABMT came too late. In April 1992, Rhonda Bast underwent an MRI scan of her brain which showed that the cancer had metastasized to her brain. The spread of the cancer disqualified her from participating in the ABMT procedure. Her health declined steadily and she died in January 1993.

On January 10, 1996, Rhonda Bast's husband and minor son filed the complaint in this case against Prudential. The complaint alleged causes of action for breach of contract, loss of consortium, loss of income, emotional distress, breach of the duty of good faith and fair dealing, violation of the Washington Consumer Protection Act and the Washington Insurance Code, and ERISA.

Prudential filed an unsuccessful motion to dismiss, followed by an unsuccessful first motion for summary judgment. Subsequently, however, the district court granted Prudential's second summary judgment motion, holding that ERISA preempted the Basts' state law claims, and that they had no ERISA remedy. The district court dismissed the Basts' complaint with prejudice, and this appeal followed.

## II

## DISCUSSION

██ We review de novo a grant of summary judgment. *Forsyth v. Humana, Inc.,* 114 F.3d 1467, 1474 (9th Cir.), *cert. denied,* — U.S. ——, 118 S.Ct. 559, 139

L.Ed.2d 401 (1997); *Bagdadi v. Nazar,* 84 F.3d 1194, 1197 (9th Cir.1996). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact for trial. *Forsyth,* 114 F.3d at 1474.

██ Whether ERISA preempts a plaintiff's state law claims is a question of law we review de novo. *Ward v. Management Analysis Co. Employee Disability Benefit Plan,* 135 F.3d 1276, 1279 (9th Cir.1998); *Spain v. Aetna Life Ins. Co.,* 11 F.3d 129 (9th Cir.1993).

### A. *Government Exemption*

The Basts first argue that the district court improperly granted summary judgment because there is an issue of fact as to whether the Plan was managed by an agency of the government. ERISA exempts from preemption any plan that is established or maintained by the U.S. government, a state government or by any agency or instrumentality of the government. 29 U.S.C. § 1002(32); 29 U.S.C. § 1003(b)(1).

██ The Basts argue that during the relevant time period, the Plan was "maintained" by the Resolution Trust Company ("RTC"), which is arguably an agency of the U.S. government. They ground this argument on the fact that from 1992 to 1995, the RTC was the receiver for a failed savings and loan association which owned shares in Cole. The S & L's shares represented about 28% of Cole's stock. The RTC was allowed to elect three members to the seven member board of directors of Cole. The RTC, however, exercised no control over Cole or the Plan, and no government employee served as a fiduciary under the Plan.

The RTC's involvement with Cole did not convert Cole's private benefit plan into a government benefit plan. The Plan was established and paid for by Cole, a private entity, for the benefit of its employees. *Cf. Silvera v. The Mutual Life Ins. Co.,* 884 F.2d 423, 427 (9th Cir.1989) (holding that where a governmental entity purchases a benefit plan on behalf of government employees and dele-

gates the administration to a private insurer, the plan is a government plan exempt from ERISA); *and see McGraw v. Prudential Ins. Co.,* 137 F.3d 1253 (10th Cir.1998) (holding that a public trust that exercised control over the beneficiary's employment did not change the benefit plan into a government plan because the trust did not establish the Plan or control it).

Cole's employee benefit plan is not a government plan and is not exempt from ERISA on that basis. The issues then become whether ERISA preempts the Basts' state law claims, and if it does, whether it provides a remedy.

## B. *ERISA Preemption*

 ERISA regulates employee benefit plans in order to promote the interests of employees and their beneficiaries. *Ward,* 135 F.3d at 1287. Under section 514(a), a state law cause of action is preempted by ERISA if it "relates to" an employee benefit plan. 29 U.S.C. § 1144(a); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). "A law relates to an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 138, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)). A state law may relate to a benefit plan even if the law "is not specifically designed to affect such plans, or the effect is only indirect." *Id.*

In more recent decisions, however, the Supreme Court has limited the scope of the "relate to" provision of ERISA. *See De Buono v. NYSA–ILA Med. and Clinical Serv. Fund,* 520 U.S. 806, ——, 117 S.Ct. 1747, 1751, 138 L.Ed.2d 21 (1997); *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). Courts must "go beyond the unhelpful text and the frustrating difficulty of defining its key term ["relate to"], and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Id.* at 656, 115 S.Ct. 1671. *See also Operating Engineers Health & Welfare Trust Fund v. JWJ Contracting Co.,* 135 F.3d 671, 677 (9th Cir.1998) ("Of late, the [Supreme] Court has come to recognize that ERISA pre-emption must have limits when it enters areas traditionally left to state regulation ...."); *Toumajian v. Frailey,* 135 F.3d 648, 653 n.3 (9th Cir.1998) ("Recently, the scope of this broad 'relate to' preemption was markedly narrowed.")

 In determining whether a state law relates to ERISA, a court must evaluate whether the state law "has a connection with or reference to" employee benefit plans. *District of Columbia v. Greater Washington Board of Trade,* 506 U.S. 125, 129, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992). "[T]o determine whether a state law has the forbidden connection, we look both to 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive,' as well as the nature of the effect of the state law on ERISA plans." *California Div. of Labor Standards Enforcement v. Dillingham Constr., Inc.,* 519 U.S. 316, ——, 117 S.Ct. 832, 838, 136 L.Ed.2d 791 (1997) (citations omitted).

The Supreme Court has held that ERISA preempts state common law tort and contract causes of action asserting improper processing of a claim for benefits under an insured employee benefit plan. *Pilot Life,* 481 U.S. at 57. The detailed provisions of ERISA § 502(a) set forth a comprehensive civil enforcement scheme that "would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Id.* at 54, 107 S.Ct. 1549.

Similarly, we have held that state law tort and contract claims as well as violations of a state insurance statute are preempted by ERISA. *Tingey,* 953 F.2d at 1131 (holding plaintiffs' causes of action for breach of contract, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, and violations of the Arizona Insurance Code were preempted by ERISA).

In a factually similar case, we held that ERISA preempts a state law wrongful death

cause of action based upon an insurance company's negligent administration of a claim. *Spain,* 11 F.3d at 132. "ERISA preempts Appellants' wrongful death action because the state law in its application directly 'relates to' the administration· and disbursement of ERISA plan benefits." *Id. See also Kanne v. Connecticut General Life Ins. Co.,* 867 F.2d 489, 494 (9th. Cir.1988) (holding that the plaintiffs' state common law causes of actions for breach of contract and breach of the duty of good faith and fair dealing, as well as a statutory cause of action for unfair insurance practices under the California Insurance Code were preempted by ERISA).

Washington state courts have also recognized ERISA preemption in circumstances similar to the Basts'. The Washington Supreme Court has held that common law claims for negligence, outrage, breach of ·contract, negligent misrepresentation and fraud which are based upon an interference with an attainment of benefits are preempted by ERISA. *Cutler v. Phillips Petroleum,* 124 Wash.2d 749, 763, 881 P.2d· 216 (1994); *Hepler v. CBS, Inc.,* 39 Wash.App. 838, 696 P.2d 596 (1985) (holding that ERISA preempts a plaintiff's claims for violation of the State Insurance Code and Consumer Protection Act).

■ ERISA, however, has a savings clause. This clause states that ERISA does not exempt any person from "any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). The Basts argue that their state law claims for violations of the Washington Insurance Code and the Washington Consumer Protection Act are not preempted by ERISA. They assert that these two state statutes fall within ERISA's "savings clause."

The Washington Insurance Code establishes a statutory duty for all insurance companies to act in good faith. It provides:

> The· business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters.

Wash. Rev.Code § 48.01.030 (1997).

Washington's Consumer Protection Act prohibits unfair or deceptive business practices. Wash. Rev.Code § 19.86 (1997).

The Basts recognize that, notwithstanding ERISA's savings clause, we have held that insurance bad faith claims are preempted by ERISA. They argue, however, that they are not suing the Plan, they are suing Prudential as an insurance company doing business in Washington. They assert that ERISA does not preempt relationships "where a plan operates just like any other commercial entity, for instance the relationship between the plan and its own employees, or the plan and its insurers or creditors...." *General Am. Life Ins. Co. v. Castonguay,* 984 F.2d 1518, 1522 (9th Cir.1993). They contend, therefore, that whether Prudential is administering a benefit plan or not, it is still bound by the good faith obligations imposed upon an insurance company by Washington's Insurance Code and Consumer Protection Act.

These arguments fail to persuade us that the Basts'·claims are exempted by ERISA's savings clause. The Basts' claims against Prudential arise out of Prudential's actions as the benefit plan administrator, not as an insurance company or insurance provider. "[T]he key issue is whether the parties' relationships are ERISA-governed relationships." *Geweke Ford v. St. Joseph's Omni Preferred Care Inc.,* 130 F.3d 1355, 1358 (9th Cir.1997) (citing *Castonguay,* 984 F.2d at 1522). Prudential's alleged breach of fiduciary duty while administering the benefit plan is conduct covered by ERISA. The Basts' claims under the Washington Insurance Code and Washington Consumer Protection Act are not exempt under ERISA's savings clause. Accordingly, these claims are covered by ERISA. If the Basts are to recover, they must do so under ERISA.

## C. *ERISA Claims*

ERISA's civil enforcement provision outlines the possible claims by a participant or beneficiary. 29 U.S.C. § 1132, ERISA § 502(a). They include: (1) an action to recover benefits due under the plan, ERISA § 502(a)(1)(B); (2) an action for breach of fiduciary duties, ERISA § 502(a)(2); and (3) a suit to enjoin violations of ERISA or the Plan, or to obtain other equitable relief, ERISA § 502(a)(3).

■ Extracontractual, compensatory and punitive damages are not available under ERISA. *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985); *Sokol v. Bernstein,* 803 F.2d 532 (9th Cir.1986) (holding that ERISA § 502(a)(3) does not allow for extracontractual damages, including damages for emotional distress).

■ The Basts' ERISA claims are for loss of Rhonda Bast's chance of survival, for out of pocket costs, loss of income, loss of consortium, and emotional distress. These claims all seek extracontractual or compensatory damages which are not recoverable under ERISA. Thus, for these claims, ERISA provides no remedy.

■ The Basts argue that if ERISA provides no remedy, ERISA should not preempt their state causes of action which do provide a remedy. They make two related arguments: (1) they should not be left without a remedy for Prudential's allegedly wrongful conduct, and (2) they are entitled to recover under ERISA's equitable relief provision, section 502(a)(3).

We addressed these two arguments in *McLeod v. Oregon Lithoprint Inc.,* 102 F.3d 376 (9th Cir.1996), *cert. denied,* ── U.S. ──, 117 S.Ct. 1823, 137 L.Ed.2d 1030 (1997). In that case, Pamela McLeod claimed that her employer's ERISA plan administrator breached its fiduciary duty by failing to notify her that she was eligible for coverage under a cancer insurance policy. *Id.* at 377. McLeod sought a judgment for the amount of benefits she would have been paid if coverage had been provided under the cancer policy, and for compensatory damages for emotional distress. *Id.* We held that the term "equitable relief" in ERISA § 502(a)(3) does not allow for the recovery of compensatory damages. *Id.* at 378. We stated that McLeod did not seek an injunction, mandamus, or restitution, and damages are not "equitable relief." *Id.*

> The basis of [McLeod's] complaint is that the fiduciaries failed to notify her in a timely manner of her right to elect cancer coverage. This is in essence a negligence claim, for which she seeks to be made whole through an award of money damages equal in amount to the benefits that she would have been paid and compensation for her emotional distress.

*Id.* Even though McLeod asserted that "without monetary relief, she [was] left with no adequate remedy," *id.* at 378, we concluded that ERISA's civil enforcement scheme was exclusive, ERISA preempted the state law claims, and damages were unavailable.

In a lawsuit nearly identical to the present lawsuit, the Tenth Circuit held that ERISA preempts state law claims even if the plaintiff is left without a remedy. *Cannon v. Group Health Serv.,* 77 F.3d 1270 (10th Cir.), *cert. denied,* ── U.S. ──, 117 S.Ct. 66, 136 L.Ed.2d 27 (1996). In *Cannon,* Phyllis Cannon was diagnosed with leukemia and needed the ABMT procedure. The insurers administering her ERISA plan denied pre-authorization for the procedure because it was experimental. *Id.* at 1271. Cannon requested reconsideration, and the insurers eventually reversed their decision and agreed to authorize the ABMT. However, by the time the procedure was authorized, Cannon's window of opportunity for receiving the ABMT had passed and she died shortly thereafter. *Id.* Cannon's surviving spouse brought an action against the insurers alleging that they negligently or in bad faith had refused to authorize in a timely manner the ABMT procedure. The Tenth Circuit held that ERISA preempts state law claims even if there is no alternative remedy under ERISA. *Id.* at 1272. *Id.* Cannon's surviving spouse was left without a remedy.

The Fifth and Sixth Circuits have reached the same conclusion under equally tragic circumstances. "While we are not unmindful of the fact that our interpretation of the preemption clause leaves a gap in remedies within a statute intended to protect participants in employee benefit plans, ... the lack of an ERISA remedy does not affect a preemption analysis." *Corcoran v. United HealthCare, Inc.,* 965 F.2d 1321, 1333 (5th Cir.1992) (ERISA administrator denied a hospital stay for woman during the final weeks of a high-risk pregnancy and the fetus died); *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 943 (6th Cir.1995) (wrongful death)

("That ERISA does not provide the full range of remedies available under state law in no way undermines ERISA preemption."); *Cromwell v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir.1991) ("Nor is it relevant to an analysis of the scope of federal preemption that appellants may be left without a remedy.").

Although forcing the Basts to assert their claims only under ERISA may leave them without a viable remedy, this is an unfortunate consequence of the compromise Congress made in drafting ERISA. *See Tolton*, 48 F.3d at 943 ("One consequence of ERISA preemption, therefore, is that plan beneficiaries or participants bringing certain types of state actions-such as wrongful death-may be left without a meaningful remedy.").

We agree with our sister circuits that ERISA preempts state law claims, even if the result is that a claimant, relegated to asserting a claim only under ERISA, is left without a remedy. The focus is on ERISA. If it does not provide a remedy, none exists. Here, the only possible remedy under ERISA is for equitable relief.[1]

### D. *Equitable Relief*

ERISA § 502(a)(3) provides that a participant or beneficiary may bring a civil action "to obtain other appropriate equitable relief" to redress violations of ERISA or to enforce provisions of ERISA or the benefit plan. 29 U.S.C. § 1132(a). The Basts argue they can obtain, under ERISA, the equitable remedy of restitution because that would be "other appropriate equitable relief."

The district court concluded that to grant restitution to the Basts would be equivalent to awarding them money damages, and such an award would not be an equitable remedy. The court stated:

[I]n this case, where the only conceivable remedy that I could foresee would be the cost of the procedure which the plaintiff was not given at a time when it would have hopefully provided some relief for her, is the same as really a legal recovery of cost.... I see no other possible theory of

restitution that would be "appropriate" in the sense of it being different than a legal remedy.

We agree.

The Supreme Court has held that the language "appropriate equitable relief" does not authorize suits for money damages for breach of fiduciary duty. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 257–58, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). " '[E]quitable relief' in the form of the recovery of compensatory damages is not an available remedy under § 502(a)(3)." *McLeod*, 102 F.3d at 378.

The Basts rely heavily upon the Supreme Court's decision in *Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). There, the Court held that ERISA participants or beneficiaries may bring an action for equitable relief for breach of fiduciary duties. *Id.* at 514–15, 116 S.Ct. 1065. The Court concluded that section 502(a)(3) is a catchall provision designed to act as a "safety net" offering appropriate equitable relief for violations of ERISA where there is no other adequate remedy. *Id.* at 512, 116 S.Ct. 1065. ERISA's basic purposes favor providing plaintiffs with a remedy. *Id.* "[I]t is hard to imagine why Congress would want to immunize breaches of fiduciary obligation that harm individuals by denying injured beneficiaries a remedy." *Id.* at 513, 116 S.Ct. 1065.

The equitable remedy provided by the Court in *Varity*, however, was reinstatement, not money damages. The *Varity* beneficiaries were tricked by an administrator into withdrawing from their benefit plan and forfeiting their benefits. The Court concluded that reinstatement was an appropriate equitable remedy. *Id.* at 515, 116 S.Ct. 1065.

The Northwest Women's Law Center ("Amicus") argues that we should impose a constructive trust as an equitable remedy in the amount which Prudential was unjustly enriched by denying coverage for the ABMT procedure. The Amicus contends that if insurance companies are not forced to disgorge

---

1. There was a brief time when Rhonda Bast could have sought equitable relief under ERISA. She could have sought an injunction to compel Prudential to authorize the ABMT procedure when Prudential first denied coverage. *See* 29 U.S.C. § 1132(a)(1)(B).

the unjust enrichment that they gain by such bad faith denials, they will have no incentive to honor legitimate requests from their ERISA beneficiaries. To the contrary, the Amicus argues, insurance companies would be given an incentive to deny expensive treatments hoping that the beneficiary would not sue, or if she or her estate did, they would be left without a remedy.

Imposition of a constructive trust for breach of a fiduciary duty is an appropriate equitable remedy under ERISA in some cases. *See FMC Medical Plan v. Owens*, 122 F.3d 1258 (9th Cir.1997); *Waller v. Blue Cross*, 32 F.3d 1337 (9th Cir.1994); *Amalgamated Clothing & Textile Workers Union, AFL–CIO v. Murdock*, 861 F.2d 1406 (9th Cir.1988). In both *Waller* and *Murdock*, we imposed a constructive trust upon the employers' "ill-gotten profits" from breach of their fiduciary duties. In both cases an identifiable portion of the beneficiaries' pension plans had been improperly taken from them.

In the present case, however, a constructive trust does not fit the mold. Here, a constructive trust is sought to force Prudential to disgorge the amount of money it saved by not paying for the ABMT procedure. This amount of money is not an "ill-gotten profit" in the same sense as the money taken from the pension plans in *Waller* and *Murdock*. While Prudential may have been unjustly enriched, it did not take money from the Plan.

Moreover, the Amicus is unclear as to what form a constructive trust would take. The Amicus suggests the trust could benefit the Plan or the Basts. Under *McLeod*, however, it is clear that the proceeds of such a trust could not be paid to the Basts because this would be the equivalent of money damages. *McLeod*, 102 F.3d at 378. And, because no funds were taken from the Plan, there are no "ill-gotten" profits to return to the Plan. We conclude that in this case a constructive trust is not an appropriate equitable remedy under ERISA § 502(a)(3). And there is no other remedy available.

---

2. Prudential's motion requesting "terms" against the Basts for Prudential having to move to strike

## III

## CONCLUSION

We echo the words of Judge Porfilio of the Tenth Circuit: "Although moved by the tragic circumstances of this case and the seemingly needless loss of life that resulted, we conclude the law gives us no choice but to affirm." *Cannon*, 77 F.3d at 1271. The Basts' state law claims are preempted by ERISA, and ERISA provides no remedy. Unfortunately, without action by Congress, there is nothing we can do to help the Basts and others who may find themselves in this same unfortunate situation.

AFFIRMED.[2]

---

a document the Basts submitted as a "supplemental excerpt of record" is denied.